FILED
CLERK, U.S. DISTRICT COURT

5/3/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VAM _____ DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0698
    Facsimile: (213) 894-3713
    E-mail:    jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>MATTHEW SKINNER,<br><br>       Defendant. | No. CR  2:22-cr-00183-PA<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MATTHEW SKINNER |

    1.   This constitutes the plea agreement between MATTHEW SKINNER ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of defendant's sale of Simple Growth, LLC bonds.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Securities Fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or involved in, the illegal activity to which defendant is pleading guilty (collectively, the "Forfeitable Assets").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the

3

Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

1    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2    additional one-level reduction if available under that section.

3                        NATURE OF THE OFFENSE

4         5.    Defendant understands that for defendant to be guilty of

5    the crime charged in the single-count information, that is,

6    Securities Fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17

7    C.F.R. § 240.10b-5, the following must be true:

8         (1) defendant willfully used a device or scheme to defraud

9         someone, made an untrue statement of a material fact, failed to

10        disclose a material fact that resulted in making the defendant's

11        statements misleading, or engaged in any act, practice, or

12        course of business that operates or would operate as a fraud or

13        deceit upon any person;

14        (2) defendant's acts were undertaken, statement was made, or

15        failure to disclose was done in connection with the sale of

16        bonds, which were securities within the meaning of 15 U.S.C.

17        § 78c(a)(10);

18        (3) defendant directly or indirectly used wire communications in

19        connection with these acts, making this statement, or this

20        failure to disclose; and

21        (4) defendant acted knowingly.

22        "Willfully" means intentionally undertaking an act, making

23   an untrue statement, or failing to disclose for the wrongful

24   purpose of defrauding or deceiving someone.  Acting willfully

25   does not require that the defendant know that the conduct was

26   unlawful.

27

28

1   A fact is material if there is a substantial likelihood
2 that a reasonable investor would consider it important in making
3 the decision to purchase securities.

4   It is not necessary that an untrue statement passed through
5 or over the wire communications so long as the wire
6 communications were used as a part of the sale transaction.

7   It is not necessary that the defendant made a profit or
8 that anyone actually suffered a loss.

9        PENALTIES AND RESTITUTION

10   6. Defendant understands that the statutory maximum sentence
11 that the Court can impose for a violation of 15 U.S.C.
12 §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, is: 20 years'
13 imprisonment; a three-year period of supervised release; a fine of
14 $5,000,000 or twice the gross gain or gross loss resulting from the
15 offense, whichever is greatest; and a mandatory special assessment of
16 $100.

17   7. Defendant understands that defendant will be required to
18 pay full restitution to the victim(s) of the offense to which
19 defendant is pleading guilty.  Defendant agrees that, in return for
20 the USAO's compliance with its obligations under this agreement, the
21 Court may order restitution to persons other than the victim(s) of
22 the offense to which defendant is pleading guilty and in amounts
23 greater than those alleged in the count to which defendant is
24 pleading guilty.  In particular, defendant agrees that the Court may
25 order restitution to any victim of any of the following for any
26 losses suffered by that victim as a result: (a) any relevant conduct,
27 as defined in U.S.S.G. § 1B1.3, in connection with the offense to
28 which defendant is pleading guilty; and (b) any charges not

prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $1,744,946, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   The Court will also order forfeiture of the property listed in the information pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) or substitute assets up to the value of that property.

9.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a

professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

12.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that relate to that conduct.

In 2014, defendant registered Empire West Equity, Inc. ("Empire West") with the California Secretary of State and used the entity primarily as a parent company for other real estate companies that he created and operated for the purpose of investing in real estate. Defendant used social media, such as Facebook and Youtube, to promote himself to be a successful real estate investor. Defendant falsely represented himself to be an experienced real estate investor with a track record of completing over $200 million in real estate transactions.

Defendant raised investment funds for Empire West by selling "coupon bonds," which he also sometimes referred to as "notes," through various shell companies that he owned and controlled. The coupon bonds entitled the bondholders to interest payments accruing on the coupon bonds, paid quarterly, and repayment of the principal when the coupon bond matured. Each coupon bond accrued interest at a specified rate of return that depended on the length of maturity. These coupon bonds constituted "securities" under the Securities Exchange Act of 1934.

In 2018, Empire West and the defendant-owned companies experienced financial trouble and defendant was unable to pay his staff and investors. During this same time period, defendant began raising money by selling coupon bonds through a new real estate entity that he created and controlled called Simple Growth, LLC ("Simple Growth").

On or about July 3, 2018, defendant began to solicit and receive victim-investor funds for Simple Growth through the sale of coupon

bonds.  Through Simple Growth brochures and a Private Placement Memorandum ("PPM"), defendant falsely represented that funds raised from the sale of Simple Growth coupon bonds would be used to invest in real estate properties, including making deposits on properties, making short-term investments, making short-term loans, cover operating costs, and perform repairs on investment properties.  The PPM also falsely stated that the funds would not be used for any other purpose.  In addition to the language in the PPM, defendant and his representatives told prospective investors that their money would be used to purchase real estate that defendant and Empire West would develop and resell at a profit.

Defendant, however, did not intend to purchase new real estate to develop and resell, as he represented.  Instead, defendant used the Simple Growth investment funds to repay investors in the other companies he owned, to pay Empire West employees, and to compensate himself.  Specifically, defendant neither bought any real estate with the funds raised through the sale of Simple Growth coupon bonds nor invested them in any manner.  Rather, he routinely used new investor funds to make distribution payments to other investors and used investor funds from the Simple Growth and Empire West entities to pay his credit cards.  In addition, defendant used investor funds from those entities and accounts to pay for personal trips, his mortgage, his utility bills, cosmetic surgery, and alimony payments to his ex-wife.

Defendant also represented that Empire West had agreed to act as a guarantor and ensure that the Simple Growth investors received their interest payments and principal when due.  The PPM also stated that Empire West was accountable to Simple Growth as a fiduciary and

consequently must exercise good faith and integrity in handling the company's affairs.  As such, defendant assumed a position of trust with respect to the investors.  While the PPM indicated that Empire West's assets may be illiquid, defendant failed to advise his investors that Empire West did not have sufficient funds to guarantee the Simple Growth bonds, as he had represented in the PPMs, or even enough funds to pay his employees or expenses.  For example, on July 31, 2018, the ending balance of the Empire West bank account was $7,987, which fell to $463 on October 1, 2018.  Defendant intentionally omitted these material facts to investors with the intent to deceive and cheat.

Defendant also attempted to entice victim-investors of other defendant-owned entities who had bond maturity dates approaching to roll over their funds to Simple Growth in exchange for additional interest points in order to avoid repaying the victim-investors their principals.  For example, in September 2019, defendant was unable to repay several victim-investors from a defendant-owned real estate company called Freedom Fund, and subsequently persuaded those victim-investors to roll over their investments from Freedom Fund into Simple Growth after defendant promised those investors additional interest points.  Defendant subsequently transferred $500,000 from a bank account in the name of Freedom Fund to a JP Morgan Chase Bank account in the name of Simple Growth (the "Simple Growth Account") based in Valencia, California.

Based on defendant's false statements and omissions of material fact, Simple Growth raised approximately $1,744,946 in funding through the sale of coupon bonds to more than 20 investors.  Most of the investments took the form of wire transfers into the Simple

Growth Account.  For example, on or about October 30, 2018, victim R.J. sent a $100,000 wire transfer from his/her Bank of America account in Florida to the Simple Growth Account for the purpose of purchasing Simple Growth coupon bonds from defendant.  Simple Growth failed to repay the victims any of the approximately $1,744,946 defendant raised.

SENTENCING FACTORS

13.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

14.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Amount b/w $1.5M and $3.5M | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| More than 10 victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Abuse of Trust | +2 | U.S.S.G. § 3B1.3 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

15.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

18.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19.    Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence, with the exception of the Court's calculation of defendant's criminal history category; (b) the term of imprisonment imposed by the Court, except to the extent it depends on the Court's calculation of defendant's criminal history category; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the

constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,744,946; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $1,744,946.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

21. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and

1   (ii) defendant waives and gives up all defenses based on the statute
2   of limitations, any claim of pre-indictment delay, or any speedy
3   trial claim with respect to any such action, except to the extent
4   that such defenses existed as of the date of defendant's signing this
5   agreement.

6   22.  Defendant also gives up any right to bring a post-
7   conviction collateral attack on the conviction or sentence, including
8   any order of restitution, except a post-conviction collateral attack
9   based on a claim of ineffective assistance of counsel, a claim of
10  newly discovered evidence, or an explicitly retroactive change in the
11  applicable Sentencing Guidelines, sentencing statutes, or statutes of
12  conviction.  Defendant understands that this waiver includes, but is
13  not limited to, arguments that the statute to which defendant is
14  pleading guilty is unconstitutional, and any and all claims that the
15  statement of facts provided herein is insufficient to support
16  defendant's plea of guilty.

17                    EFFECTIVE DATE OF AGREEMENT

18  23.  This agreement is effective upon signature and execution of
19  all required certifications by defendant, defendant's counsel, and an
20  Assistant United States Attorney.

21                      BREACH OF AGREEMENT

22  24.  Defendant agrees that if defendant, at any time after the
23  effective date of this agreement, knowingly violates or fails to
24  perform any of defendant's obligations under this agreement ("a
25  breach"), the USAO may declare this agreement breached.  All of
26  defendant's obligations are material, a single breach of this
27  agreement is sufficient for the USAO to declare a breach, and
28  defendant shall not be deemed to have cured a breach without the

16

express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 14 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2       29.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   TRACY L. WILKISON
    United States Attorney

9

10  _____        5/3/2022
    JEFF MITCHELL                            Date
11  Assistant United States Attorney

12  _____        _____
    MATTHEW SKINNER                          Date
13  Defendant

14  _____        _____
    ROBERT HELFEND                           Date
15  Attorney for Defendant
    Matthew Skinner

16

17

18

19                    CERTIFICATION OF DEFENDANT

20       I have read this agreement in its entirety.  I have had enough

21  time to review and consider this agreement, and I have carefully and

22  thoroughly discussed every part of it with my attorney.  I understand

23  the terms of this agreement, and I voluntarily agree to those terms.

24  I have discussed the evidence with my attorney, and my attorney has

25  advised me of my rights, of possible pretrial motions that might be

26  filed, of possible defenses that might be asserted either prior to or

27  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

28  of relevant Sentencing Guidelines provisions, and of the consequences

                                   19

1           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          29. The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 TRACY L. WILKISON
   United States Attorney

9

10

     _____        Date
11 JEFF MITCHELL
   Assistant United States Attorney

12                                  4.26.22
     _____        Date
13 MATTHEW SKINNER
   Defendant

14                                  4-26-22
     _____        Date
15 ROBERT HELFEND
   Attorney for Defendant
   Matthew Skinner
16

17

18

19                    CERTIFICATION OF DEFENDANT

20          I have read this agreement in its entirety.  I have had enough

21 time to review and consider this agreement, and I have carefully and

22 thoroughly discussed every part of it with my attorney.  I understan

23 the terms of this agreement, and I voluntarily agree to those terms.

24 I have discussed the evidence with my attorney, and my attorney has

25 advised me of my rights, of possible pretrial motions that might be

26 filed, of possible defenses that might be asserted either prior to

27 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a

28 of relevant Sentencing Guidelines provisions, and of the consequenc

                                   19

1   of entering into this agreement.  No promises, inducements, or

2   representations of any kind have been made to me other than those

3   contained in this agreement.  No one has threatened or forced me in

4   any way to enter into this agreement.  I am satisfied with the

5   representation of my attorney in this matter, and I am pleading

6   guilty because I am guilty of the charge and wish to take advantage

7   of the promises set forth in this agreement, and not for any other

8   reason.

9   _____          __4/26/22_____

10  MATTHEW SKINNER                           Date
    Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          20

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Matthew Skinner's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____           4-26-22
ROBERT HELFEND                             Date
Attorney for Defendant
Matthew Skinner

# EXHIBIT A

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [15 U.S.C. §§ 78j(b), 78ff and 17
                                        C.F.R. § 240.10b-5: Securities
13   MATTHEW SKINNER,                   Fraud; 18 U.S.C. § 981(a)(1)(C);
                                        28 U.S.C. § 2461(c): Criminal
14            Defendant.                Forfeiture]

15

16

17        The United States Attorney charges:

18             [15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5]

19   A.   INTRODUCTORY ALLEGATIONS

20        At times relevant to this Information:

21        1.   Defendant MATTHEW SKINNER was a resident of Santa Clarita,

22   California.

23        2.   Defendant SKINNER founded Empire West Equity, Inc. ("Empire

24   West") in 2014 for the purpose of investing in real estate.  Empire

25   West was a California corporation with its principal place of

26   business in Santa Clarita, California.  Defendant SKINNER was the

27   owner and manager of Empire West and exerted complete managerial

28

control over Empire West, which he operated as a parent company that conducted the day-to-day operations of his real estate business.

3. Defendant SKINNER owned and controlled various shell corporations that were incorporated and had associated bank accounts but did not have separate offices, employees, or any other expenses or revenues (the "SKINNER-owned companies").

4. Defendant SKINNER raised investment funds for Empire West by selling "coupon bonds," which he also sometimes referred to as "notes," through the SKINNER-owned companies.  The coupon bonds entitled the bondholders to interest payments accruing on the coupon bonds, paid quarterly, and repayment of the principal when the coupon bond matured.  Each coupon bond accrued interest at a specified rate of return that depended on the length of maturity.  The coupon bonds issued by the SKINNER-owned companies constituted "securities" under the Securities Exchange Act of 1934.

5. One of the SKINNER-owned companies that issued coupon bonds was Simple Growth, LLC ("Simple Growth"), which defendant SKINNER founded in 2017.  Simple Growth was a Delaware limited liability company with its principal place of business in Santa Clarita, California.  Defendant SKINNER was the owner and manager of Simple Growth and exerted complete managerial control over Simple Growth.

6. Defendant SKINNER exercised sole control over a JP Morgan Chase Bank account in the name of Simple Growth (the "Simple Growth Account") in Valencia, California, within the Central District of California.

B.   THE SCHEME TO DEFRAUD SIMPLE GROWTH INVESTORS

7. Beginning no later than in or about July 2018, and continuing through at least in or about December 2020, in Los Angeles

2

County, within the Central District of California, and elsewhere,
defendant SKINNER, knowingly and willfully, directly and indirectly,
by the use of the means and instrumentalities of interstate commerce
and the mails, in connection with the purchase and sale of Simple
Growth coupon bonds, used and employed manipulative and deceptive
devices and contrivances by: (1) employing a scheme to defraud; (2)
making untrue statements of material facts and omitting to state
material facts necessary in order to make the statements made, in
light of the circumstances under which they were made, not
misleading; and (3) engaging in acts, practices, and courses of
business which operated and would operate as a fraud and deceit upon
purchasers and prospective purchasers of Simple Growth coupon bonds
(the "victims"), by causing materially false and fraudulent
statements and material omissions to be made to the victims about the
use of the funds raised by the Simple Growth coupon bonds sold to the
victims.

    8.   The scheme to defraud operated, in substance, as follows:

         a.   Defendant SKINNER marketed Simple Growth coupon bonds
to the victims as "high-yield real estate investment bond[s]."  To
persuade victims to purchase Simple Growth bonds, defendant SKINNER
provided them with a brochure that falsely stated that "[t]he funds
are used to acquire apartment projects, renovate, make deposits on
land and assets."  In truth, defendant SKINNER did not invest funds
raised from the sale of Simple Growth coupon bonds in any real estate
projects.  Instead, he used the funds on a combination of personal
expenses, Empire West business expenses, expenses to fund his
marketing and fundraising efforts, and interest payments to Simple
Growth coupon bond holders.

b.    The brochure defendant SKINNER provided investors also falsely represented that "[t]he funds are also diversified, so all your eggs will never be [in] one basket, and are secured by the tens of millions in equity, and cash flow that the company already owns." In truth, Simple Growth did not in fact own tens of millions of dollars in equity or cash flow at any point at the time defendant SKINNER marketed Simple Growth coupon bonds.

c.    To further induce victims to purchase Simple Growth coupon bonds, defendant SKINNER also distributed to victims a Private Placement Memorandum ("PPM") that falsely represented that Simple Growth "intends to utilize the proceeds raised in this Offering towards short term loans to affiliated and non-affiliated parties involved in real estate investment seeking loans for the short-term for their respective real estate projects.  The Company may use some of the proceeds as deposits to secure real estate properties as well as making short-term investments."  In truth, Simple Growth did not invest any of the funds raised through the sale of coupon bonds in short-term loans or to secure any real estate project or property.

d.    To create the misimpression that their investments were safe, defendant SKINNER also represented, through the PPM, that Empire West had "agreed to guarantee the repayment of the Notes." In doing so, defendant SKINNER concealed from the victims the fact that Empire West was not solvent, and its primary bank account had a balance of $7,987 on July 31, 2018.

e.    Between July 2018 and June 2020, defendant SKINNER persuaded investors from insolvent projects in the SKINNER-owned companies to "roll over" their investments into Simple Growth bonds by falsely representing that the projects had been profitable.

4

9.   In executing the fraudulent scheme described above, defendant SKINNER, operating through Simple Growth, caused the victims losses of approximately $1,744,946.

C.   <u>EXECUTION OF THE FRAUDULENT SCHEME</u>

10.   On or about October 30, 2018, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, and in furtherance of the manipulative and deceptive devices described above, defendant SKINNER caused the use of an instrumentality of interstate commerce in connection with the purchase and sale of securities, namely, the transfer of approximately $100,000 from a bank account controlled by Victim R.J. in the State of Florida, by means of interstate wires, to the Simple Growth Account.

1                          FORFEITURE ALLEGATION

2              [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 981(a)(1)(C) and Title 28, United States

7   Code, Section 2461(c), in the event of defendant SKINNER's conviction

8   of the offense set forth in this Information.

9        2.    Defendant SKINNER, if so convicted, shall forfeit to the

10  United States of America the following:

11            (a)    All right, title, and interest in any and all

12  property, real or personal, constituting, or derived from, any

13  proceeds traceable to the offenses; and

14            (b)    To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph (a).

17       3.    Pursuant to Title 21, United States Code, Section 853(p),

18  as incorporated by Title 28, United States Code, Section 2461(c),

19  defendant SKINNER, if so convicted, shall forfeit substitute

20  property, up to the value of the property described in the preceding

21  paragraph if, as the result of any act or omission of the defendant,

22  the property described in the preceding paragraph or any portion

23  thereof (a) cannot be located upon the exercise of due diligence; (b)

24  has been transferred, sold to, or deposited with a third party; (c)

25  has been placed beyond the jurisdiction of the court; (d) has been

26  //

27

28

1  substantially diminished in value; or (e) has been commingled with
2  other property that cannot be divided without difficulty.
3
4                                    TRACY L. WILKISON
                                     United States Attorney
5
6
7                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
8                                    Chief, Criminal Division
9                                    KRISTEN A. WILLIAMS
                                     Assistant United States Attorney
10                                   Acting Chief, Major Frauds Section
11                                   ALEXANDER B. SCHWAB
                                     Assistant United States Attorney
12                                   Deputy Chief, Major Frauds Section
13                                   JEFF MITCHELL
                                     Assistant United States Attorney
14                                   Major Frauds Section
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                     7

## CERTIFICATE OF SERVICE

I, **Simonia White**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT  MATTHEW SKINNER**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:
☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

**Robert Helfend, Esq.**
**13101 Washington Boulevard,Suite 464**
**Los Angeles, CA 90066**

This Certificate is executed on **May 3, 2022**, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

*Simonia White*
Simonia White
Legal Assistant