ROBERT M. HELFEND, SBN. 113380
23838 Pacific Coast Hwy, No. 309
Malibu, CA 90265
310-456-3317
Attorney for Defendant
MATTHEW J. SKINNER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>              v.<br><br>MATTHEW J. SKINNER,<br><br>    Defendant. | Case No. 2:22-cr-00183-PA-1<br><br>DEFENDANT'S SENTENCING MEMORANDUM |
|---|---|

MATTHEW J. SKINNER, through Counsel, pursuant to 18 U.S.C. § 3553(a), hereby files his Sentencing Memorandum with which he respectfully requests this Honorable Court to exercise its discretion and impose a sentence below that suggested by the advisory Sentencing Guidelines.

Dated: October 23, 2022          Respectfully Submitted,

                                       /s/ Robert M. Helfend
                                     ROBERT M. HELFEND
                                 ATTORNEY FOR DEFENDANT
                                     MATTHEW J. SKINNER

## I. INTRODUCTION

As reflected in the Plea Agreement, Mr. Skinner acknowledged that he freely and voluntarily entered into the plea agreement because he was in fact guilty. When considering all the factors of his offenses, his acknowledgment of responsibility, his willingness to plead guilty pre-indictment, his age, vocational experience, close family ties and responsibilities, and his remorsefulness, we respectfully request that this Court impose a sentence in the BOP that is sufficient, but not greater than necessary.

Such a sentence is one that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing as required by 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552, U.S. 85, 101 (2007). A sentence of forty-eight (48) months will satisfy the statutory goals of sentencing and will constitute a sentence that reasonably provides just punishment, protects the public, promotes respect for the law, affords adequate deterrence, and promotes rehabilitation as required by 18 U.S.C. § 3553(a)(2).

This memorandum:

(1) addresses all the factors set out in 18 U.S.C. § 3553(a), which the Court must consider in determining the sentence to impose;

(2) sets out the reasons why the facts of this specific case are unique; and

(3) explains why a sentence that includes more than 48-months imprisonment would be excessive and result in unwarranted disparity;

//
//
//

A. **Procedural History**

Being more precise than what the Information alleges, from on or around the years 2019 to 2020, Mr. Skinner's conduct ran afoul of the provisions contained in 15 U.S.C. §§ 78j(b), 78ff; and 17 C.F.R. § 240.10b-5.

On June 1, 2022, Matthew pled guilty to a Single-Count Information. The Parties agree to the following Sentencing Guideline factors: a base offense level of 7 pursuant to USSG §2B1.1(a)(1); a 16-level increase for loss between $1.5 million and $3.5 million pursuant to USSG §2B1.1(b)(1)(I); a two-level increase for more than 10 victims pursuant to USSG §2B1.1(b)(2)(A); and a two-level increase for abuse of trust pursuant to USSG §3B1.3. The Government agrees to recommend a three-level reduction for acceptance of responsibility. The parties also reserve the right to argue that additional specific offense characteristics, adjustments and departures are appropriate and for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

B. **Sentencing Under the Guidelines**

**1. Base Offense Level**

Matthew has been working and investing other individual's money in real estate since 2004. From 2004 to 2013, Mr. Skinner was involved in the purchase and sale of approximately 24 single family homes. Matthew would buy homes and refurbish them or purchase the land and construct a house on an unimproved lot. All of these transactions were successful, and his investors made a profit.

Mr. Skinner registered Empire West Equity, Inc. (Empire West) with the

California Secretary of State and used the entity primarily as a parent company for other real estate companies that he created and operated for the purpose of investing in real estate.

In 2015, Matthew invested Empire West funds into his Longacre and Bayside projects. Longacre involved the subdivision and development of 4 lots. Each lot was to have a single-family home built on it. Litigation ground this project to a halt. Bayside is a project where 2 approximate 8,278 square foot homes were built, and one house is currently for sale for $26,900,000. The profit from this sale was contemplated to be used to make all of Mr. Skinner's investors whole.

In 2016, Matthew started Twelve Stone Capital Partners where investor capital was utilized to purchase and renovate an 18 Unit apartment complex in Arizona. This project created an 18% return for investors.

In 2017, Matthew created Freedom Fund to purchase and renovate a 43 Unit apartment complex in Phoenix, Arizona. This venture sold in 2018 and the roughly $700,000.00 in investor profit was rolled into the Simple Growth Fund with Mr. Skinner's financial backer's consent. These investors consented to the rollover with the understanding that their money from the Freedom Fund would be held with interest in anticipation of Empire West's next real estate venture.

From June 2018 to December 2018 Empire West's Acquisition team were unable to identify any properties that fit their stringent investment strategy; namely luxury residential land to build speculative homes for sale or a dilapidated or unbuilt apartment complex to add value to.

Compounding the financial difficulties, in January 2019, Matthew injured his

back while lifting weights. Immediately after sustaining the injury, Mr. Skinner's left leg was paralyzed. As a result of his injuries, Matthew had surgery to repair three disks in his back and to shape and cut his vertebrae. After the surgery, Mr. Skinner continued to experience paralysis, pain, difficulty walking and standing and numbness, nine months after the surgery. During most of 2019, Matthew was not in the office and had staff raise funds and operate his business. The representations of staff members made during this time to any new investors were Mr. Skinner's responsibility, but he was not there to oversee the solicitations and day-to-day use of the money to fund operations.

From December 2018 to about August 2019 Mr. Skinner was technically incapacitated by injury, fear of permanent paralysis, and the use of prescription drugs and alcohol to curb the physical and emotional pain. During this time Matthew was unable to identify investment property suitable to the Company's investment strategy.

In December 2019 Mr. Skinner identified a potential development project in McAllen Texas. Around March of 2020 Empire West entered into an agreement with partners to develop a 260-unit complex in McAllen Texas. Had this project been able to go forward, the potential profit would have been sufficient to repay all of the Simple Growth investors and made everyone whole. Unfortunately his project was quashed after being notified by the SEC to cease and desist. See attached IRS Tax ID number for Athena Capital in May 2020.

The SEC complaint was allegedly lodged by a single investor in the Simple Growth Fund.

Regrettably, during this period Mr. Skinner used funds from the Simple Growth

Fund to pay operating costs of the company and these monies were not used to invest in new real estate projects.

The offense conduct emanates from Matthew's and/ or his employee's representations to investors in order to entice them to place their money into investment funds controlled by Empire West. Mr. Skinner would sell "coupon bonds," which he also sometimes referred to as "notes." The coupon bonds entitled the bondholders to interest payments, paid quarterly and repayment of the principal when the coupon bond matured. Each coupon bond accrued interest at a specified rate of return that depended on the length of maturity.

On July 3, 2018, Matthew and/ or his representatives began to solicit and receive victim-investor funds for Simple Growth through the sale of coupon bonds. Through Simple Growth brochures and a Private Placement Memorandum (PPM), Mr. Skinner represented that funds raised from the sale of Simple Growth coupon bonds would be used to invest in real estate properties, including making deposits on properties, making short-term investments, making short-term loans, cover operating costs, and perform repairs on investment properties.

During this time period, Mr. Skinner invested his clients' funds in the Longacre and Bayside projects. Funds from Simple Growth were used to conduct the ongoing operations to manage Bayside Equity (no cash flow), and to further the purchase of the option to buy the property constituting Longacre Estates (no cash flow), as well as Matthew's Company's operating Expenses.

Mr. Skinner tried to continue making the payments on the outstanding bonds but could not keep up with the obligations. New projects were not materializing and the

projects that were being built were slow to get to a point of producing any profit. Matthew used new Simple Growth investment money to pay quarterly distributions to existing Simple Growth investors. Mr. Skinner also utilized investor funds during this period to pay for operating expenses for his office and staff.

Matthew admits that based on his and his employees' false statements and omissions of material fact, Simple Growth raised approximately $1,044,946 in funding through the sale of coupon bonds to more than 20 investors. $700,000 came from the rollover from his successful sale of the 43 Unit apartment complex in Phoenix, Arizona. Most of the investments took the form of wire transfers into the Simple Growth Account.

The Offense Conduct was a result of a business growing too fast without the proper infrastructure. Many of Mr. Skinner's financial backers were family friends who are characterized as "sophisticated investors."

Both the Government and United States Department of Probation have utilized United States Sentencing Guideline USSG §2B1(a)(1). Since the offense of conviction has a statutory maximum term of 20 years imprisonment, the Base Offense level of 7 applies. The Base Offense Level of 7 is not in dispute. USSG §2B1.1(b)(1)(I) provides for a 16-level increase if the loss was more than $1,500,000 but less than $3,500,000. Based on the Plea Agreement, the 16- level increase is appropriate, however, $700,000 of the funds used to calculate loss under the Guidelines, was profit from a previous successfully managed and produced project. If the Court were to exclude this $700,000, the Guideline would reduce to a level 14.

**2. Specific Offense Characteristic**

**(1) More than 10 Victims:** The Parties agreed that there were 22 investors who sustained a loss in this matter. Thus, USSG §2B1.1(b)(2)(A) provides for a 2-level increase if the offense involved 10 or more victims.

**(2) Sophisticated Means:** Probation has represented to this Court that a 2-point adjustment should be applied as Mr. Skinner engaged in conduct which constituted "sophisticated means."

The Defense objects to this application as it is mis-applied. This adjustment applies to "especially complex or intricate offense conduct pertaining to the execution or concealment of an offense." Specifically, hiding assets through the use of different entitles is a common characteristic of a defendant employing "sophisticated means" to deceive their victims.

Here, the allegations of misconduct simply involve making false representations of the ultimate use of investors' funds. Mathew and or his employees made false representations that funds raised from the sale of coupon bonds from Mr. Skinner's company, Simple Growth, would be used to invest in real estate properties, including making deposits on properties, making short-term investments and loans, covering operating costs and performing repairs on investment properties. There was no effort to conceal assets from investors.

Empire West included its complete debt to Simple Growth LLC on its tax return in 2019 which was circulated to investors. There was never an attempt to cover anything up.  Matthew cooperated fully with the the SEC investigation and provided them financial statements prepared by Empire West's controller that evidenced Empire's debt to the investors by way of Simple Growth. There was no "hiding assets".

See attached Empire West 2019 federal and state tax return listing its liabilities. Thus no adjustment should apply for Sophisticated Means.

### 3. Role in the Offense

The Parties have agreed that a 2-level adjustment under USSG §3B1.3 (Abuse of Position of Trust or Use of Special Skill)

### 4. Acceptance of Responsibility

Both the Government and Probation recommend a 3-point downward departure for Mr. Skinner under acceptance of responsibility. Mr. Skinner has clearly demonstrated acceptance of responsibility for the offense. Matthew joins in this request for a 3-point downward departure.

### 5. Defense Calculation

As stated above, Mr. Skinner objects to Probation's use of the Sophisticated Means Adjustment. Thus, Matthew's adjusted base offense level is a 27. After Acceptance, Mr. Skinner's Total Offense Level would be 24. (A level 22 if the Court considers the $700,000 rollover was collected before the inception of the fraud.)

However, the Defense urges the Court to vary downwards from there utilizing the Court's power to do so based on the particular circumstances of this case and the nature and characteristics of Mr. Skinner.

## II. ARGUMENT

### A. Booker and 18 U.S.C. 3553(a)

The decision of the United States Supreme Court in *United States v. Booker,* 125 S. Ct. 738 (2005), has rendered the United States Sentencing Guidelines "effectively advisory." *Booker* at 759-67. Pursuant to *Booker,* sentencing courts are

required to consider a Defendant's guideline range, but may "tailor the sentence in light of other statutory concerns as well." *Id.* at 767 *(citing* 18 U.S.C. § 3553 (a)).

As a result of *Booker* federal district courts must consider the seven factors set forth by 18 U.S.C. § 3553 (a) in determining a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) [the applicable Sentencing Guidelines];

(5) any pertinent [Sentencing Guidelines] policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victim of the offense.

Moreover, § 3553(a) and the 'parsimony provision' mandate that the District Court "impose a sentence sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). Sufficiency of a sentence rather than excessiveness is echoed in 18 U.S.C. § 3582, which recognizes that "imprisonment is not an appropriate means of promoting correction and rehabilitation."

Under the advisory Guideline scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas*, 405 F.3d 814 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id*. See also *United States v. Menyweather*, 431 F.3d 692 (9th Cir. 2005) (finding that "[i]n the 'broader appraisal,' available to district courts after *Booker*, courts can now . . . have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed "not ordinarily relevant," such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities).

Under *Booker* and *Gall,* "[t]he sentence is to be "individualized" and the Court must consider all of the sentencing factors enumerated in 3553(a) and "make an individualized assessment based on the facts presented." *Booker*, 125 S. Ct. 738 (2005); *Gall v. United States,* 552 U.S. 38, 50 (2007). While it may be a distinction without much difference, there is, in fact, a distinction between a sentence that results in a variance from the Guidelines based upon the Court's consideration of all the 3553 factors, and a sentence that is applied below the Guidelines as a result of certain downward departures found within the Guidelines. See *Irizarry v. United States*, 553 U.S. 708, 709 (2013); *see also Pepper v. United States*, 131 S. Ct. 1229, 1247 (2011).

For the reasons set forth above and below, Mr. Skinner's circumstances could give this Court justification for a downward adjustment based on relevant variance grounds found in the 3553(a) factors.

**B. Applying the Factors Contained In 18 U.S.C. § 3553(a)**

    **i.**    **History and Characteristics of the Defendant**

Matthew is a 45-year-old, United States citizen, and has 2 siblings. On August 7, 2007, Mr. Skinner married Christina Johnson Skinner in Marina Del Rey. In 2018, they divorced. The marriage produced three children. Charlotte Skinner, age 13, William Skinner, age 12, and Madeline Mae Skinner, age 10. Matthew's children reside with Christina Skinner in Santa Clarita. Mr. Skinner maintains a close relationship with his children. He coaches his son's football teams and talks to his children daily. Matthew lives only a few miles away from his children and sees them regularly. Mr. Skinner is the sole financial provider for his children as his ex-wife is unemployed. A long term of incarceration would financially devastate Matthew's family and jeopardize his ability to monetarily support the college education of his children.

Mr. Skinner resides at his parents' home located at 28878 Shadyview Drive, Canyon Country, California. Skinner rents a guest home located to the rear of the main house.

Recently, Matthew's father was diagnosed with stage 4 renal cancer. He is currently participating in a clinical trial at UCLA Hospital in Los Angeles. The cancer has metastasized to Mr. Skinner's father's bones and lungs. Matthew helps his mother around the house with chores while she cares for Mr. Skinner's father. Matthew also drives his father to doctor's appointments.

As is evidenced in the letters of support submitted on Mr. Skinner's behalf, Matthew is relied upon by his family. Mr. Skinner is the sole financial provider for his children and has planned on financing their college educations. Matthew is essential to his mother to keep her household running smoothly as his father undergoes treatment for his stage 4 cancer. Mr. Skinner is eager to get back to work in order to pay for the restitution ordered by the SEC and by this Court. A sentence which parallels Matthew's eagerness to earn money to return to his investors could aid in the reduction of his financial backer's losses.

Matthew has provided motivation for family members and demonstrated a strong work ethic.

### ii. *Work History*

From July 2021 to June 2022, Mr. Skinner was employed at Tri Point Homes in Canyon Country, as an independent contractor, earning approximately $60 hourly. Matthew was terminated from this employment due to the instant offense.

Beginning in 2014, Mr. Skinner began operating Empire West Equity, Inc., a real estate investment company. Matthew raised capital, bought land, and built luxury homes for sale. Mr. Skinner has built luxury homes in Los Angeles, Santa Monica, and Newport Beach. Since 2001, Matthew has been self-employed as a real estate investor.

### iii. *Acceptance of Responsibility*

Mr. Skinner is incredibly remorseful for committing this crime. Many of the investors in Matthew's business are personal friends or family and Mr. Skinner hopes to repay restitution when the properties associated with Bayside Equity, Inc. are sold.

Matthew's company Empire West Equity, Inc., currently has a multimillion-dollar property pending sale in Corona Del Mar. Matthew hopes that the proceeds from the sale of the properties can be utilized to help pay his restitution obligation. The current property for sale is located at 2209 Bayside Drive, Corona Del Mar, California which is listed for sale at $26,900,000. The residence consists of five bedrooms, nine bathrooms and is approximately 8,278 square feet.

Due to the SEC tolling agreement, Mr. Skinner is prohibited from personally accessing the funds and is prohibited from speaking to the victims in this matter due to a stay away Order as one of Matthew's conditions of his bond.

Mr. Skinner also understands the financial and emotional damage he has done to his family.

Matthew has demonstrated that he can be a productive member of society and a stable source of income for his family throughout his working life. Mr. skinner urges this Court to Order a sentence that would be "sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2).

### iv. *Criminal History*

#### (1) *Mr. Skinner's Criminality is Overstated by his Calculated Criminal History*

The Probation report notes that Mr. Skinner has earned 3 criminal history points. Matthew scored 1 point each for a 1996 conviction for a Misdemeanor Conspiracy to Commit Battery in Clark County Nevada and from a Misdemeanor Prohibited Ownership of Ammunition conviction in 2014.

The United States Sentencing Guidelines ("Guidelines") 4A1.3 provides:

"There may be cases where the Court concludes that a defendant's criminal history category significantly over represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes...The Court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category...and therefore consider a downward departure from the guidelines".

Under the Guidelines, criminal history is relevant in determining the culpability of an offender. In order to protect the public from further crimes of a particular defendant and the likelihood of recidivism, past criminal behavior must be considered.

The Government's attempt to soil Mr. Skinner's character with old pictures in a photo album and photos of a book on Matthew's shelf is disappointing. The images in the scrapbook are from over 20 years ago when Mr. Skinner was in his late teens. The mention of the Turner Diaries does not indicate the date it was received by Matthew or how long it was on the bookshelf. There are also hardcovers from Tony Robbins and titles on love and relationships. The Government gloms onto anything they feel will inflame the Court into an incorrect and unfair assessment of Matthew's character.

Mr. Skinner received his unfortunate tattoos when he was in prison. All of his white supremacist tattoos were removed when Matthew was released from prison, approximately 19 years ago. A fact the Government learned after they submitted their Sentencing Position to this Court.

The inclusion of a photograph of Matthew in a MAGA hat is troubling. Many people believe in some of the principals of the MAGA movement. Is it a crime to

believe in MAGA in this country? The majority of MAGA participants are non-violent. The Government's insertion of the Proud Boys Manifesto confounds the imagination. Mr. Skinner has never attended a rally where he advocated violence or where forcefulness was promoted to overthrow our Government. Matthew was not in Washington D.C. on January 6, 2021.

Here, Matthew's past misdemeanor imprudence's are 22 years and 8 years old. This behavior certainly would not foretell to predict his involvement in this instant matter. Thus Mr. Skinner respectfully requests that the Court downwardly vary in criminal history category to a Level I. Matthew earned 1 criminal History point for a pending matter in San Fernando Court.

In 2019, after suffering his back injury, Matthew feared that he would not be able to walk again. Mr. Skinner's brother became a quadriplegic after a snowboarding accident, and Matthew feared that he might also remain paralyzed forever. Mr. Skinner was prescribed Vicodin for the pain. For approximately six months, Matthew drank alcohol heavily and used Vicodin daily to numb the pain and calm his fears. During this time, Mr. Skinner drank Gin, Tequila, and Vodka on a daily basis. Matthew was unable to walk and became depressed. With the help of family support, after six months, Skinner stopped using Vicodin. Matthew is interested in participating in a drug and alcohol treatment program (RDAP) while incarcerated.

    **v.**    ***The Need for the Sentence Imposed***

Section 3553(a)(2) lists the four purposes of sentencing, which can be summarized as: just punishment, deterrence, protection of the public, and rehabilitation.

### a. Just Punishment

A slight downward varied sentence for a 45-year-old man, with a history of Misdemeanor criminal activity 22 and 8 years ago, and a large circle of family that want him to excel and need him, would satisfy the goals of sentencing. Matthew strives to do better in the future. The advisory guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." *See United States* v. *Johnson,* 964 F.2d 124,125 (2nd Cir. 1992).

### b. Deterrence

Mr. Skinner has been a productive and beneficial member of society. He recognizes and accepts that he has violated Federal Law. He understands that the Court will fashion a sentence which the Court deems appropriate. However, he also acknowledges and assents that he will not participate in the same behavior in the future. Matthew's engagement in this offense is partly due to his consumption of prescribed drugs and alcohol, along with his extended absence from his office.

### c. Protection of the Public

Any argument that Mr. Skinner is a danger to the community is contradicted by the productivity he has demonstrated through his continued employment, his caring and loving nature with his family and the facts and circumstances of this case.

Mr. Skinner's conduct through his life before becoming entangled in this matter suggests that the public need not be protected from him. *See United States* v. *Thomas,* 595 F. Supp. 2d 949, 952 (E.D. Wis. 2009) (wherein a probationary sentence was imposed despite a guideline recommendation of imprisonment).

Matthew recognizes and accepts that he had a lapse of good judgement. He

understands that a sanction is appropriate. However, he also recognizes and accepts that he will not engage in the same conduct ever again.

With regards to rehabilitation, 18 U.S.C. § 3582 rejects the notion that imprisonment is an appropriate means of promoting correction or rehabilitation:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

In following this provision, the advisory sentence contained in Mr. Skinner's PSR would not promote rehabilitation. A nominal downward variance sentence of imprisonment would be the more appropriate sentence for Matthew.

**vi.        The Kinds of Sentences Available**

Pursuant to *Booker*, this Honorable Court has significant discretion in fashioning a sentence that is "reasonable" based on § 3553(a), including incarceration and supervised release. In the instant case, a guidelines prison sentence would contravene 18 U.S.C. § 3553(a) and the 'Parsimony Provision' which proscribes the imposition of a sentence that is greater than necessary to achieve the statutory goals as set forth above.

Mr. Skinner respectfully requests that the Court sentence him to a term in the BOP that is "sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). Any term in prison, away from his loved ones, will be sufficient to deter Matthew from ever committing another criminal act. He has concrete plans for the future and will be putting them into action.

### III.  CONCLUSION

Wherefore, considering all the reasons above, and those presented at the sentencing hearing, Mr. Skinner respectfully requests that this Honorable Court exercise its discretion and impose a downward variance.  Matthew humbly appeals to this Court to consider eliminating the $700,000 rollover of funds when calculating the recommended guideline loss. These funds were not solicited with any misrepresentations. That would equate to a level 24 adjusted base offense level.

Should the Court determine that Mr. Skinner's Criminal History is overstated and downwardly depart to a level I, Matthew's recommended guideline range would be 51 – 63 months.

Mr. Skinner requests that he be given a sentence that is reasonable, but not greater than necessary and accounts for his contributions to society and respectfully requests that the Court sentence Matthew to a term in the BOP that is "sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2), with a recommendation for RDAP and placement at Lompoc.

Dated: October 23, 2022            Respectfully Submitted,

     /s/ *Robert M. Helfend*
     ROBERT M. HELFEND
     ATTORNEY FOR DEFENDANT
     MATTHEW J. SKINNER

DECLARATION OF SERVICE

I, ROBERT M. HELFEND, declare that I am over eighteen years of age and not a party to the within cause; my business address is, 23838 Pacific Coast Hwy., No. 309, Malibu, California, 90265.

On November 7, 2022, I personally served a true copy, via email, of the attached DEFENDANT'S SENTENCING MEMORANDUM, on each of the following CM/ECF registered parties:

JEFF MITCHELL, AUSA
U.S. Attorney's Office
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
jeff.mitchell@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 7, 2022, at Malibu, California.

                    <u>/s/ Robert M. Helfend</u>
                    ROBERT M. HELFEND